

12 CV 6680

Andrew B. Clubok
Beth A. Williams
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200
Andrew.Clubok@kirkland.com
Beth.Williams@kirkland.com

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BGC PARTNERS, INC.,<br>and G&E ACQUISITION COMPANY, LLC,<br><br>Plaintiffs,<br><br>- against -<br><br>AVISON YOUNG (CANADA), INC.,<br>AVISON YOUNG (USA) INC.,<br>AVISON YOUNG - NEW YORK, LLC,<br>AVISON YOUNG - NEVADA, LLC,<br>AVISON YOUNG - WASHINGTON, DC.,<br>LLC,<br>AVISON YOUNG - CHICAGO, LLC,<br>AVISON YOUNG - NEW ENGLAND, LLC,<br>AVISON YOUNG - ATLANTA, LLC,<br>AVISON YOUNG - SOUTHERN<br>CALIFORNIA, LTD.,<br>and AVISION YOUNG - PITTSBURGH,<br>LTD.,<br><br>Defendants. | Case No.:_____<br><br>ECF Case |



## NOTICE OF REMOVAL

Defendant Avison Young - Nevada, LLC, by and through its undersigned counsel, hereby

provides notice pursuant to 28 U.S.C. § 1446 of the removal of the above-captioned case from

the Supreme Court of the State of New York, County of New York to the United States District

Court for the Southern District of New York.[1]  The Court has subject matter jurisdiction, and the matter is therefore removable, for two independently sufficient reasons:  First, this action is removable pursuant to 28 U.S.C. §§ 1334(b) and 1452(a) because it is "related to" a pending bankruptcy proceeding.  Second, this case is removable pursuant to 28 U.S.C. §§ 1332 and 1441 because complete diversity exists in this action, disregarding the Defendant that has been fraudulently joined.  In support of removal, Avison Young - Nevada, LLC states as follows:

## BACKGROUND

1.      On August 1, 2012, the Plaintiffs commenced this action by filing a complaint (the "Complaint") in the Supreme Court of the State of New York in the County of New York, Index No. 652669/2012 (the "State Court Action").

2.      On August 3, 2012, Plaintiffs served Avison Young - Nevada, LLC with a copy of the Summons and Complaint.  The Complaint and the Summons are attached as **Exhibit A**.  Avison Young - Nevada, LLC has filed no pleadings or papers in the State Court Action, and the time for Avison Young - Nevada, LLC to answer, move to dismiss, or otherwise respond to the Complaint has not yet expired.

3.      Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of service of the complaint on Avison Young - Nevada, LLC.  Because Avison Young - Nevada, LLC was served on August 3, 2012, this Notice of Removal is timely.

---

[1]    In removing this action, Defendants preserve any and all defenses. *See, e.g., Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) ("Removal does not waive any Rule 12(b) defenses," including "defense of lack of personal jurisdiction".); *Gay v. Carlson*. No. 89 Civ. 4757 (KMW), 1991 WL 190584, at *5 (S.D.N.Y. Sept. 17, 1991) ("[M]erely by removing a case from state to federal court a party does not waive any of its defenses under Rule 12(b), including a motion to dismiss for improper service.").

4.      Concurrent with the filing of this Notice, Avison Young - Nevada, LLC is serving this Notice on Plaintiffs' counsel and filing a copy of the Notice with the Clerk of the Supreme Court of the State of New York, New York County.

5.      No previous application has been made for this or similar relief. This Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11.

6.      This is not a "core" proceeding within the meaning of 28 U.S.C. § 157(b) or Federal Rule of Bankruptcy Procedure 9027 upon removal. Defendants do not consent to entry of final order or judgment by any bankruptcy judge.

7.      The United States District Court for the Southern District of New York embraces the county in which the State Court Action is now pending. Venue is therefore proper for this Notice of Removal under 28 U.S.C. §§ 112(b) and 1446(a).

8.      All other Defendants to this action, Avison Young (Canada), Inc., which was served on August 13, 2012, and Avison Young-USA Inc., Avison Young-New York, LLC, Avison Young-Washington D.C., LLC, Avison Young-Chicago, LLC, Avison Young-New England, LLC, Avison Young-Atlanta, LLC, Avison Young-Southern California, Ltd., and Avison Young-Pittsburgh, LLC., which were each served on August 3, 2012, consent to the removal of this action. Their consent is attached as **Exhibit B**.

## JURISDICTION

9.      This Court has jurisdiction over this case under 28 U.S.C. §§ 1332 and 1334. This case is therefore removable under 28 U.S.C. §§ 1441 and 1452.

3

**This Court Has Original Jurisdiction Under 28 U.S.C. § 1334**

10.     Section 1334 provides district courts with jurisdiction to hear all civil proceedings "arising in" or "related to" cases under the Bankruptcy Code.  28 U.S.C. § 1334(b).  A civil proceeding is "related to" a bankruptcy case if it "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re WorldCom, Inc., Sec. Litig.*, 293 BR. 308, 317 (S.D.N.Y. 2003); *see also In re Cuyahoga Equip. Co.*, 980 F.2d 110, 114 (2d Cir. 1992) (adopting "any conceivable effect" test).  This includes matters that are directly or indirectly related to the bankruptcy case.  *See In re Mann*, 907 F.2d 923, 926 n.4 (9th Cir. 1990).  "For a federal court to have 'related to' jurisdiction over an action, 'the proceeding need not necessarily be against the debtor or against the debtor's property.   An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re WorldCom*, 293 B.R. at 317 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995).)  Thus, a civil proceeding may be "related to" a bankruptcy case even if it involves a suit between third parties. *See id.*

11.     This case is directly related to the bankruptcy of Grubb & Ellis Company ("Grubb and Ellis").   On February 20, 2012, Grubb & Ellis and its subsidiaries filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  (See Compl. ¶ 24.)  Plaintiffs explicitly allege in their Complaint that Defendants unlawfully acquired the assets of the Grubb & Ellis estate.  Specifically, the Complaint alleges that Defendants "repeatedly commit[ed] criminal theft from [the] bankruptcy estate in violation of 18 U.S.C. § 152" (Compl. ¶ 4); that the Defendants improperly violated the automatic stay by receiving property of the bankruptcy estate (Compl. ¶

4

31); and that the Defendants continue to engage in acts which harm the bankruptcy estate (*see* Compl. ¶¶ 89-93).

12.     Moreover, Plaintiffs admit that the contract rights with which Defendants allegedly interfered *still* belong to the estate.  The Complaint states that: "From April 5, 2012, to the date of this Complaint, BGC Partners has owned the beneficial interest in the commissions, contract rights, and assets that are the subject of this Complaint by virtue of its right to designate such rights and assets for assignment to BGC Partners.  However, these contract rights and assets *continue to be property of the bankruptcy estate* — and subject to the protections of the 'automatic stay' — until transferred to BGC Partners." (Compl. ¶ 26) (emphasis added).

13.     Finally, Plaintiffs seek injunctive relief to stop Defendants from allegedly continuing to "diminish[] the value of Plaintiffs' investment in Grubb & Ellis and conceal[] assets from the bankruptcy estate." (Compl. ¶ 93.)

14.     Plaintiffs thus plainly allege a "conceivable effect" on the bankruptcy estate.  Although the prayer for relief unsurprisingly requests that monetary damages "in excess of $1 million" be awarded directly to Plaintiffs, the underlying allegations make clear that the property was allegedly taken "from the bankruptcy estate."  Accordingly, if the claims are successful, any property actually taken from the estate and assets concealed from the estate would presumably be returned *to the estate*.

### This Court Has Diversity Jurisdiction Under 28 U.S.C. § 1332

15.     As an additional and independent basis for removal, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds $75,000 and is between citizens of different states, disregarding the Defendant that has been fraudulently joined.

16.     Plaintiff BGC Partners is a Delaware corporation with its principal place of business in New York. (Compl. ¶ 7.)

17.     Plaintiff G&E Acquisition Company, LLC is a Delaware limited liability company with its principal place of business in New York. (Compl. ¶ 7.)

18.     Defendant Avison Young is a Canadian limited liability company with its principal place of business in Canada. (Compl. ¶ 9.)   Defendant Avison Young-USA is an Illinois corporation with its principal place of business in Illinois.  (Compl. ¶ 10.) Defendant Avison Young-Nevada is a Nevada limited liability company with its principal place of business in Nevada.  (Compl. ¶ 12.) Defendant Avison Young-Washington D.C. is a Maryland limited liability company with its principal place of business in Washington, D.C. (Compl. ¶ 13.) Defendant Avison Young-Chicago is an Illinois limited liability company with its principal place of business in Illinois.   (Compl. ¶ 14.)   Defendant Avison Young-New England is a Massachusetts limited liability company with its principal place of business in Massachusetts. (Compl. ¶ 15.) Defendant Aavison Young-Atlanta is a Georgia limited liability company with its principal place of business in Georgia.  (Compl. ¶ 16.) Defendant Avison Young-Southern California is a California limited liability company with its principal place of business in California.  (Compl. ¶ 17.)   Defendant Avison Young-Pittsburgh is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. (Compl. ¶ 18.)

19.     Plaintiffs also named as a defendant Avison Young-New York, a New York limited liability company with its principal place of business in New York.  The presence of Avison Young-New York does not defeat diversity jurisdiction because Avison Young-New York is an improper, fraudulently joined defendant.  The citizenship of a fraudulently joined

6

defendant may be disregarded for the purposes of evaluating diversity jurisdiction. *See Wilson v. Republic Iron & Stell Co.*, 257 U.S. 92, 97 (1921).

20.     As the Second Circuit has consistently observed, a "plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal" through a fraudulent joinder of defendants. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (internal citations omitted).   To establish fraudulent joinder, the removing party need not demonstrate "fraud" as the term is generally understood. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).   A finding of fraudulent joinder is appropriate where, as here, "there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant[s] in state court." *Id.*

21.     Here, there is no possibility, based on the pleadings, that Plaintiffs can state a cause of action against Avison Young-New York — or, for that matter, any of the other Defendants.   To state a claim against a defendant, the Complaint must plead claims that are "plausible" on their face.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Plausibility "asks for more than a sheer possibility that a defendant acted unlawfully" and demands instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   Here, the Complaint contains ***no allegations*** of the role of Avison Young-New York in committing the alleged tortious acts.   In fact, the Complaint contains only one fleeting mention of Avison Young-New York, alleging that "[a]t least one broker in Grubb & Ellis' office in New York, New York, departed after the bankruptcy filing to join Avison Young-New York." (Compl. ¶ 50.) This statement provides no basis for liability of any sort.

7

22.     The Complaint does not allege that anyone at Avison Young-New York had knowledge of the broker's contract with Grubb & Ellis or intentionally procured the breach of the contract. Nor does the Complaint even allege that there was a breach or that such breach resulted in damages to Plaintiff. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (In order to show tortious interference with contractual relationships, the Plaintiffs must show 1) the existence of a valid contract between the Plaintiffs and a third party; 2) the Defendants knowledge of the contract; 3) the Defendants intentional procurement of the third party's breach of the contract; 4) actual breach; and 5) resulting damages.); *see also Millar v. Ojima*, 354 F. Supp. 2d 220, 229 (E.D.N.Y. 2005) (holding that the Plaintiff must "identify a specific contractual term that was breached" in order to sustain a claim of tortious interference with a contractual relationship).

23.     By the same token, there is no possibility that Plaintiffs can state a cause of action against Avison Young-New York for tortious interference with a prospective business relationship. To prove that claim, the plaintiff is required to show: 1) the existence of a business relationship with a third party; 2) Defendants' interference with those business relations; 3) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and 4) injury to the business relationship. *See Advanced Global Tech. LLC. v. Sirius Satellite Radio, Inc.*, 15 Misc. 3d 776, 779 (Sup. Ct. N.Y. County 2007). Plaintiffs have not alleged that Avison Young-New York interfered with business relations, that it acted with the sole purpose to harm the Plaintiffs, or that it used wrongful means. There are simply no allegations specific to Avison Young-New York that would legitimate a claim against it.

24.     Similarly, Plaintiffs cannot state a claim against Avison Young-New York for unjust enrichment. A claim for unjust enrichment must demonstrate that 1) the Defendants were

8

enriched; 2) at Plaintiff's expense, and 3) equity and good conscience militate against permitting Defendant to retain what Plaintiffs seek to recover. *Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  In order to prevail on an unjust enrichment claim, Plaintiff must plead a sufficiently direct relationship or connection with the Defendants. *Jet Star Enters., Ltd. v. Soros*, No. 05 Civ. 6585(HC), 2006 WL 2270375, at *5 (S.D.N.Y. Aug. 9, 2006). Plaintiffs do not allege that there is any relationship between Avison Young-New York and the Plaintiffs.  Plaintiffs also fail to allege that Avison Young-New York received any of the business opportunities purportedly owing to Grubb & Ellis when a departing broker joined Avison Young-New York. (*See* Compl. ¶ 50.)  Accordingly, no basis exists in the Complaint for a claim that Avison Young-New York was unjustly enriched.

25.     Finally, Plaintiffs cannot state a claim against Avison Young-New York for aiding and abetting a breach of fiduciary duty and a duty of fidelity.  Actual knowledge of the principal violation of which plaintiff complains is necessary to sustain claims of aiding and abetting a breach of fiduciary duty and duty of fidelity. *See, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, 376 F. Supp. 2d 385, 412 (S.D.N.Y. 2005) ("[T]o state a claim for aiding and abetting liability, plaintiffs must allege 'actual knowledge' by the aider and abettor of the primary violation.  Allegations of constructive knowledge or recklessness are insufficient.") Plaintiffs make no allegations of Avison Young-New York's knowledge of any fiduciary duty or duty of fidelity owed to Plaintiffs by brokers.  The general and conclusory allegations contained in the complaint are not sufficient to make a claim for any of the Defendants, much less Avison Young-New York.  Therefore, there is no reasonable basis for Plaintiffs' claim that Avison Young-New York aided and abetted any breach of fiduciary duty or duty of fidelity.

26.    The lack of any viable claim against Avison Young-New York suggests that it was included in this action for the sole purpose of defeating diversity jurisdiction.  As such, it should be disregarded in that analysis.

**CONCLUSION**

27.    WHEREFORE, Defendant Avison Young - Nevada, LLC, pursuant to 28 U.S.C. §§ 1332, 1334, 1441, and 1452, removes this action in its entirety from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York.

Dated: August 31, 2012

Respectfully Submitted,

*Beth A. Williams*

Andrew B. Clubok
Beth A. Williams
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone:     (202) 879-5000
Facsimile:      (202) 879-5200
Andrew.Clubok@kirkland.com
Beth.Williams@kirkland.com

*Attorneys for Defendants Avison Young (Canada), Inc., Avison Young-USA Inc., Avison Young-New York, LLC, Avison Young-Nevada, LLC, Avison Young-Washington D.C., LLC, Avison Young-Chicago, LLC, Avison Young-New England, LLC, Avison Young-Atlanta, LLC, Avison Young-Southern California, Ltd., and Avison Young-Pittsburgh, LLC*

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 08/01/2012
NYSCEF DOC. NO. 1

INDEX NO. 652669/2012
RECEIVED NYSCEF: 08/01/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BGC PARTNERS, INC.,
and G&E ACQUISITION COMPANY, LLC,

Plaintiffs,

-against-

AVISON YOUNG (CANADA), INC.,
AVISON YOUNG (USA) INC.,
AVISON YOUNG - NEW YORK, LLC,
AVISON YOUNG - NEVADA, LLC,
AVISON YOUNG - WASHINGTON, D.C., LLC,
AVISON YOUNG - CHICAGO, LLC,
AVISON YOUNG - NEW ENGLAND, LLC,
AVISON YOUNG - ATLANTA, LLC,
AVISON YOUNG - SOUTHERN CALIFORNIA,
LTD.,
and AVISON YOUNG - PITTSBURGH, LTD.,

Defendants.

Index No. _____

Date Index No. Purchased: August 1, 2012

Plaintiff designates New York County as place of trial.

**SUMMONS**

Venue is proper pursuant to CPLR § 503(a) because Plaintiffs and at least one of the Defendants are residents of New York County.

To:    AVISON YOUNG (CANADA), INC., 18 York Street, Suite 400, Toronto, Ontario, Canada, M5J 2T8.

AVISON YOUNG (USA) INC., 9700 West Higgins Road, Suite 500, Rosemont, Illinois, 60018.

AVISON YOUNG - NEW YORK, LLC, 245 Park Avenue, New York, New York, 10167.

AVISON YOUNG - NEVADA, LLC, 3753 Howard Hughes Parkway, Suite 200, Las Vegas, Nevada, 89169 or 985 Damonte Ranch Parkway, Reno, Nevada, 89521.

AVISON YOUNG - WASHINGTON, D.C., LLC, 1999 K Street, N.W., Suite, 650, Washington, D.C, 20006.

AVISON YOUNG - CHICAGO, LLC, 120 N. LaSalle Street, Suite 3300, Chicago, Illinois, 60602 or 9700 West Higgins Road, Suite 500, Rosemont, Illinois, 60018.

AVISON YOUNG - NEW ENGLAND, LLC, 52-R Roland Street, Boston, Massachusetts, 02129.

AVISON YOUNG - ATLANTA, LLC, 30 Ivan Allen Jr. Boulevard, NW, Suite 900, Atlanta, Georgia, 30308.

AVISON YOUNG - SOUTHERN CALIFORNIA, LTD., 2029 Century Park E, Suite 950, Los Angeles, California, 90067 or 6711 Forest Lawn Drive, Los Angeles, California, 90068.

AVISON YOUNG - PITTSBURGH, LTD, 625 Liberty Avenue, Suite 3150, EQT Plaza, Pittsburgh, Pennsylvania, 15222.

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance on the Plaintiffs' attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       August 1, 2012

COVINGTON & BURLING LLP

By: _____
       C. William Phillips

Alicia J. Surdyk
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000

*Attorneys for Plaintiffs*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

BGC PARTNERS, INC.,
and G&E ACQUISITION COMPANY, LLC,     :

            Plaintiffs,       :

                               :       Index No.

        - v. -               :

AVISON YOUNG (CANADA), INC.,     :
AVISON YOUNG (USA) INC.,         :
AVISON YOUNG - NEW YORK, LLC,    :
AVISON YOUNG - NEVADA, LLC,      :
AVISON YOUNG - WASHINGTON, D.C., LLC, :
AVISON YOUNG - CHICAGO, LLC,       :
AVISON YOUNG - NEW ENGLAND, LLC,  :
AVISON YOUNG - ATLANTA, LLC,      :
AVISON YOUNG - SOUTHERN CALIFORNIA, LTD., :
and AVISON YOUNG - PITTSBURGH, LTD.  :

            Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

      Plaintiffs BGC Partners, Inc. ("BGC Partners") and its indirect subsidiary, G&E

Acquisition Company, LLC (together, "Plaintiffs"), file this Complaint ("Complaint") against

defendants Avison Young (Canada), LLC ("Avison Young") and its U.S. affiliates, Avison

Young (USA) Inc. ("AY-USA"), Avison Young - New York, LLC ("AY-New York"), Avison

Young - Nevada, LLC ("AY-Nevada"), Avison Young - Washington, D.C., LLC ("AY-

Washington D.C."), Avison Young - Chicago, LLC ("AY-Chicago"), Avison Young - New

England, LLC ("AY-New England"), Avison Young - Atlanta, LLC ("AY-Atlanta"), Avison

Young - Southern California, Ltd. (AY-Southern California"), and Avison Young - Pittsburgh,

LLC ("AY-Pittsburgh") (together, "Defendants") upon personal knowledge solely as to their own actions and upon information and belief as to all other matters.

<u>Preliminary Statement</u>

1.     Grubb & Ellis, founded in 1958, is one of the oldest and largest real estate brokerages in the United States, with about 90 offices across the country. Avison Young is one of Canada's largest real estate brokerage firms.

2.     Until 2008, Avison Young's Chairman and Chief Executive Officer, Mark Rose, was the President of Grubb & Ellis in the United States. After Mr. Rose left Grubb & Ellis to join Avison Young, the latter company began an aggressive hiring campaign in the U.S. In so doing, as described in this Complaint, it has tortiously and illegally looted Grubb & Ellis's commissions, personnel, offices, business, and business opportunities. Avison Young's scheme to divert the assets of Grubb & Ellis continued unabated even after Grubb & Ellis filed for bankruptcy protection. Avison Young has acted in defiance of the protections Grubb & Ellis was due under the bankruptcy laws. Plaintiffs bring this lawsuit to recover their damages and to stop Defendants from continuing their illegal conduct.

3.     Avison Young and its U.S. affiliates have carried out this scheme through a variety of tortious and illegal means. They have induced Grubb & Ellis affiliates to breach contracts in order to join Avison Young. They have induced dozens of Grubb & Ellis brokers to break their employment or independent contractor agreements. And they have induced and assisted larceny by these same brokers by rewarding them—with full knowledge or recklessness to the consequences—for concealing and stealing business opportunities that belonged to Grubb & Ellis.

- 2 -

4.     Associating and conspiring with each other and with Grubb & Ellis brokers, Avison Young and its U.S. affiliates continued their enterprise even after Grubb & Ellis filed for bankruptcy by repeatedly committing criminal theft from a bankruptcy estate in violation of 18 U.S.C. § 152.

5.     By this action, Plaintiffs seek redress for the harmful and illegal actions of Avison Young and its U.S. affiliates, co-conspirators in Avison Young's theft.  Defendants' actions have tortiously interfered with Grubb & Ellis's (and therefore Plaintiffs') contracts and property interests, stealing offices, brokers, contracts, and business opportunities.

6.     Plaintiffs seek an injunction to end this conduct and damages to redress the injuries owed as a result of Defendants' wrongful conduct.

Parties

7.     BGC Partners is a Delaware Corporation with its principal place of business at 499 Park Avenue, New York, New York.  BGC Partners, through its indirect subsidiary, G&E Acquisition Company, LLC, is the purchaser of and successor in interest to certain assets, contract rights, and causes of action of Grubb & Ellis Company ("Grubb & Ellis"), a Delaware Corporation with its principal place of business at 1551 N. Tustin Avenue, Suite 300, Santa Ana, California, its affiliate Grubb & Ellis Affiliates, Inc. ("Grubb & Ellis Affiliates"), a Delaware Corporation with its principal place of business at 500 W. Monroe, Suite 2900, Chicago, Illinois, and other Grubb & Ellis affiliates.  G&E Acquisition Company, LLC is a Delaware Limited Liability Company with its principal place of business at 499 Park Avenue, New York, New York.

8.     Grubb & Ellis operates its brokerages either directly or, in some cases, through affiliates licensed to perform real estate brokerage services in particular states.  The relationships

- 3 -

between Grubb & Ellis and its affiliated brokerages are governed by contracts between Grubb & Ellis Affiliates and the affiliated brokerages.

9.      Defendant Avison Young is a Canadian Limited Liability Company with its principal place of business at 18 York Street, Suite 400, Toronto, Ontario, Canada. According to information published on Avison Young's web site, it is Canada's largest independently-owned commercial real estate services company.

10.     AY-USA is an Illinois Corporation with its principal place of business at 9700 West Higgins Road, Suite 500, Rosemont, Illinois. AY-USA is owned, directly or indirectly, and controlled by Avison Young.

11.     AY-New York is a New York Limited Liability Company with its principal place of business at 245 Park Avenue, New York, New York. AY-New York is owned, directly or indirectly, and controlled by Avison Young.

12.     AY-Nevada is a Nevada Limited Liability Company with its principal place of business at 3753 Howard Hughes Parkway, Suite 200, Las Vegas, Nevada or 985 Damonte Ranch Parkway, Reno, Nevada. AY-Nevada is owned, directly or indirectly, and controlled by Avison Young.

13.     AY-Washington D.C. is a Maryland Limited Liability Company with its principal place of business at 1999 K Street, N.W., Suite, 650, Washington, D.C. AY-Washington, D.C. is owned, directly or indirectly, and controlled by Avison Young.

14.     AY-Chicago is an Illinois Limited Liability Company with its principal place of business at 120 N. LaSalle Street, Suite 3300, Chicago, Illinois or 9700 West Higgins Road, Suite 500, Rosemont, Illinois. AY-Chicago is owned, directly or indirectly, and controlled by Avison Young.

15.    AY-New England is a Massachusetts Limited Liability Company with its principal place of business at 52-R Roland Street, Boston, Massachusetts.  AY-New England is owned, directly or indirectly, and controlled by Avison Young.

16.    AY-Atlanta is a Georgia Limited Liability Company with its principal place of business at 30 Ivan Allen Jr. Boulevard, NW, Suite 900, Atlanta, Georgia.  AY-Atlanta is owned, directly or indirectly, and controlled by Avison Young.

17.    AY-Southern California is a California Limited Liability Company with its principal place of business at 2029 Century Park E, Suite 950, Los Angeles, California or 6711 Forest Lawn Drive, Los Angeles, California.  AY-Southern California is owned and controlled, directly or indirectly, by Avison Young.

18.    AY-Pittsburgh is a Pennsylvania Limited Liability Company with its principal place of business at 625 Liberty Avenue, Suite 3150, EQT Plaza, Pittsburgh, Pennsylvania.  AY-Pittsburgh is owned and controlled, directly or indirectly, by Avison Young.

19.    The unlawful scheme and conspiracy described herein was conceived, directed, and controlled by officers, directors and/or employees of Avison Young.  Avison Young's U.S. affiliates implemented and carried out the scheme and conspiracy under Avison Young's direction and control.

Jurisdiction and Venue

20.    The court has personal jurisdiction over Defendant AY-New York because it is a domestic corporation with its principal place of business in New York.  The court has personal jurisdiction over all other defendants pursuant to CPLR § 302(a) and because New York was the location for many of the tortious actions from which this action arises.  This Court has personal jurisdiction over the foreign defendants as co-conspirators and beneficiaries of the illegal

- 5 -

activities that have been orchestrated by Avison Young and carried out, in part, by AY-New York within the State of New York.

21.     Venue is proper in New York County pursuant to CPLR § 503 because BGC Partners, G&E Acquisition Company, LLC, and at least one of the Defendants are residents of New York County.

<u>Plaintiffs' Real Estate Brokerage Business</u>

22.     BGC Partners is a leading global brokerage company primarily servicing the wholesale financial and property markets. BGC Partners first entered the real estate brokerage business in October 2011 when it purchased Newmark Knight Frank, an international real estate brokerage firm.

23.     Effective on April 5, 2012, BGC Partners expanded its real estate brokerage business by acquiring, through its indirect subsidiary, G&E Acquisition Company, LLC, substantially all of the assets of Grubb & Ellis and its subsidiaries, including a beneficial interest in and right to acquire the assets of Grubb & Ellis and its subsidiaries. These assets included, among others, contracts and leads to provide management, leasing, sales and financial services, as well as the commissions for those contracts.

24.     Previously, on February 20, 2012 (the "Petition Date"), Grubb & Ellis and its subsidiaries filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The purchase by BGC Partners was conducted in accordance with the provisions set forth in Section 363 of the Bankruptcy Code. BGC Partners combined the real estate brokerage operations it acquired from Grubb & Ellis with its existing real estate brokerage operations under the name Newmark Grubb Knight Frank. Pursuant to a Second Amended and Restated Asset Purchase Agreement and a Transition Services Supplement to the Asset Purchase

- 6 -

Agreement between Grubb & Ellis and BGC Partners, each dated April 13, 2012, executory contracts to which Grubb & Ellis is a party remain with Grubb & Ellis pending the designation by BGC Partners of such contracts for assignment to BGC Partners.

       25.     From the Petition Date through the April 5, 2012, effective date of the sale, the assets of Grubb & Ellis and its subsidiaries were property of the bankruptcy estate and, as such, were subject to the "automatic stay" established by Section 362(a)(3) of the Bankruptcy Code. The "automatic stay" prohibits any act to obtain possession of property of a bankruptcy estate, including, but not limited to executory contracts. In addition, 18 U.S.C. § 152(1) makes it a felony to knowingly and fraudulently conceal from a bankruptcy estate "any property belonging to the estate of a debtor," and 18 U.S.C. § 152(5) makes it a felony to "knowingly and fraudulently receive any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11."

       26.     From April 5, 2012, to the date of this Complaint, BGC Partners has owned the beneficial interest in the commissions, contract rights, and assets that are the subject of this Complaint by virtue of its right to designate such rights and assets for assignment to BGC Partners. However, these contract rights and assets continue to be property of the bankruptcy estate—and subject to the protections of the "automatic stay"—until transferred to BGC Partners.

Defendants' Unlawful Scheme And Conspiracy
To Plunder Plaintiffs' Real Estate Brokerage Assets

       27.     Before 2009, Avison Young and its predecessors did not provide significant real estate brokerage or other services in the United States. In 2009, as part of its self-described "aggressive growth and expansion strategy," Avison Young began acquiring real estate brokerage operations in the U.S. market. It opened its first U.S. office in Chicago in 2009,

followed by additional offices in, among other places, Washington, D.C., Atlanta, Boston, Los Angeles, Reno, New York City, and Pittsburgh.

28.     Avison Young's expansion into the U.S. real estate brokerage market followed its retention of Mark Rose as its Chief Executive Officer in June 2008. Before Mr. Rose joined Avison Young in June 2008, he was the Chief Executive Officer of Grubb & Ellis, a position he left in December 2007. Mr. Rose was elected Chairman of the Board of Directors of Avison Young in November 2008.

29.     Defendants' aggressive expansion strategy has been carried out, at least in part, by unlawful means and to the detriment of Grubb & Ellis and Plaintiffs. Mr. Rose, who—as the former CEO of Grubb & Ellis—was intimately familiar with the operations and offices of the firm, has set out on a scheme to expand aggressively in the U.S. by stealing the operations and offices of his former company for his new company, Avison Young.

30.     Avison Young did not even attempt to bid for the assets of Grubb & Ellis in the bankruptcy sale. Instead, the Company determined to subvert the bankruptcy process and steal as many of those assets—including commissions, contracts, offices, and personnel—as possible through an illegal scheme to loot Grubb & Ellis. In particular, among other actions, Defendants tortiously conspired to induce certain affiliates of Grubb & Ellis to breach their affiliation agreements with Grubb & Ellis Affiliates, including agreements that were the property of the bankruptcy estate. In addition, Defendants tortiously conspired to induce certain Grubb & Ellis brokers surreptitiously to convert brokerage opportunities that are the property of Grubb & Ellis and Plaintiffs.

- 8 -

The Affiliate Agreements

31.     Grubb & Ellis, through its subsidiary, Grubb & Ellis Affiliates, has contractual arrangements with a number of established real estate brokerage companies to provide real estate brokerage services under Grubb & Ellis's service and trademarks in selected states.  Defendants tortiously conspired with at least two of these affiliates to terminate their contracts with Grubb & Ellis Affiliates.  Both of these putative terminations occurred during the period when the "automatic stay" in bankruptcy was in effect and, as such, were illegal under the Bankruptcy Code.  Moreover, these terminations resulted in Defendants' knowing and fraudulent receipt of property of the bankruptcy estate and, as such, constituted a criminal violation of 18 U.S.C. § 152(5).

32.     The Nevada Agreement:  On April 1, 2010, Grubb & Ellis Affiliates entered into a "Commercial Real Estate Brokerage Affiliation Agreement" (the "Nevada Agreement") with the Nevada Commercial Group (the "Nevada Group").  The Nevada Agreement provided, among other things, that the Nevada Group would participate, as an affiliate of Grubb & Ellis Affiliates, in cooperative marketing and referral programs.  The parties agreed that, during the term of the Nevada Agreement, the Nevada Group received the right to use certain Grubb & Ellis services and trademarks in the conduct of its brokerage business.  The term of the Nevada Agreement was for three years, until April 1, 2013.

33.     The Nevada Agreement is terminable with or without cause, subject to certain limitations and conditions.  If the Nevada Group terminates without cause, it is obligated to provide written notice to Grubb & Ellis Affiliates not less than one hundred and fifty (150) calendar days in advance of the April 1, 2013 expiration date.

- 9 -

34.     By letter dated March 1, 2012—while the "automatic stay" remained in effect and without providing the requisite 150-day advance notice—the President of the Nevada Group, John Pinjuv, notified Grubb & Ellis Affiliates of the Nevada Group's intent not to renew the Agreement at the end of its present term and, in addition, that it would be "ceasing its operations effective March 5, 2102."

35.     Also on March 5, 2012, the day that the Nevada Group indicated it was "ceasing its operations," Avison Young issued a Press Release stating that it was opening a new office in Reno, at the same address previously occupied by the Nevada Group, with Mr. Pinjuv serving as its Managing Director.

36.     Grubb & Ellis Affiliates responded to Mr. Pinjuv's letter on May 31, 2012.  The May 31, 2012 letter notified the Nevada Group that its purported termination of the Nevada Agreement was unlawful under Section 362(a)(3) of the Bankruptcy Code and, further, that it was ineffective under the relevant terms of the Nevada Agreement.  Grubb & Ellis Affiliates also stated that the Nevada Group's current affiliation with Avison Young was a clear breach of the non-competition provisions of the Nevada Agreement, and it demanded that the Nevada Group immediately **"CEASE AND DESIST"** from any further affiliation with Avison Young, and resume the performance of its duties under the Nevada Agreement.

37.     The Nevada Group responded through its bankruptcy counsel by letter dated June 8, 2012.  Counsel did not deny that the Nevada Group's purported termination of the Nevada Agreement was unlawful but indicated that the Nevada Group, having ceased operations, was "insolvent" and "does not have the funds" to pay any amounts that might be due to Grubb & Ellis Affiliates under the Nevada Agreement.

- 10 -

38.    At least Avison Young and AY-Nevada were aware of the Nevada Group's ongoing obligations under the Nevada Agreement and were also aware that the Nevada Group's purported termination of the Nevada Agreement was barred by the "automatic stay" provision of the Bankruptcy Code. At least Avison Young and AY-Nevada were also aware, or should have been aware, that their knowing and fraudulent receipt of assets belonging to the bankruptcy estate constituted a criminal violation of 18 U.S.C. § 152(5). Avison Young's March 5, 2012 Press Release boasted that "[p]rior to joining Avison Young, [Mr. Pinjuv] served as President of Grubb & Ellis|NCG in Reno, specializing in investment properties in the Northern Nevada area."

39.    The South Carolina Agreement: On January 1, 2010, Grubb & Ellis Affiliates entered into a "Commercial Real Estate Brokerage Affiliation Agreement" (the "South Carolina Agreement") with WRS Real Estate, LLC f/k/a Barkley Fraser.com, LLC. The South Carolina Agreement provided, among other things, that WRS Real Estate would participate, as an affiliate of Grubb & Ellis Affiliates, in cooperative marketing and referral programs. The parties agreed that, during the term of the South Carolina Agreement, WRS Real Estate received the right to use certain Grubb & Ellis service and trademarks in the conduct of its brokerage business. The term of the South Carolina Agreement was for three years, i.e., until January 1, 2013.

40.    The South Carolina Agreement is terminable with or without cause, subject to certain limitations and conditions. If WRS Real Estate terminates without cause, it is obligated to provide written notice to Grubb & Ellis Affiliates not less than one hundred and fifty (150) calendar days in advance of the January 1, 2013 expiration date.

41.    By letter dated April 10, 2012—while the "automatic stay" remained in effect and without providing the requisite 150-day advance notice—the President of WRS Real Estate,

- 11 -

Christopher B. Fraser, notified Grubb & Ellis Affiliates of WRS Real Estate's intent "to terminate the [South Carolina Agreement], effective May 15, 2012."

42.     On May 14, 2012—the day before WRS Real Estate purported to terminate the South Carolina Agreement—Avison Young issued a Press Release stating that it was opening a new office in Charleston, South Carolina at the same address previously occupied by WRS Real Estate, with Mr. Fraser serving as its Principal of South Carolina operations.

43.     Grubb & Ellis Affiliates responded to Mr. Fraser's letter on May 31, 2012.  The May 31, 2012 letter notified WRS Real Estate that its purported termination of the South Carolina Agreement was unlawful under Section 362(a)(3) of the Bankruptcy Code and, further, that it was ineffective under the relevant terms of the South Carolina Agreement.  Grubb & Ellis Affiliates also stated that WRS Real Estate's current affiliation with Avison Young was a clear breach of the non-competition provisions of the South Carolina Agreement, and it demanded that WRS Real Estate immediately **"CEASE AND DESIST"** from any further affiliation with Avison Young, and resume the performance of its duties under the South Carolina Agreement.

44.     As of this date, WRS Real Estate has not responded to the May 31, 2012 letter from Grubb & Ellis Affiliates.

45.     At least Avison Young and AY-South Carolina were aware of WRS Real Estate's ongoing obligations under the South Carolina Agreement and were also aware that WRS Real Estate's purported termination of the South Carolina Agreement was barred by the "automatic stay" provision of the Bankruptcy Code.  At least Avison Young and AY-South Carolina were also aware, or should have been aware, that their knowing and fraudulent receipt of assets belonging to the bankruptcy estate constituted a criminal violation of 18 U.S.C. § 152(1) and (5).  Avison Young's May 14, 2012 Press Release boasted that "[e]ffective immediately, 12 real

- 12 -

estate professionals – nine brokers and three staff members – form Avison Young's new Charleston office. All 12 members were most recently with Grubb & Ellis in Charleston."

The Broker Agreements

46.     Grubb & Ellis, like other real estate brokerage firms, had and continues to have contractual arrangements with individual licensed real estate brokers who are licensed to perform brokerage services in various states. Defendants have tortiously conspired, and continue to conspire, with dozens of the brokers to induce them to terminate their contracts. Some of these terminations resulted in Defendants' concealment of commissions and other property from the bankruptcy estate and knowing and fraudulent receipt of property of the bankruptcy estate and, as such, constituted criminal violations of 18 U.S.C. § 152(1) and (5).

47.     Defendants also have conspired with Grubb & Ellis brokers to steal property belonging to the bankruptcy estate of Grubb & Ellis. During a broker's term of employment—or during the term of his or her independent contractor agreement—the broker is required to consummate all real estate transactional and service opportunities through the brokerage firm. By contract and by custom and practice in the industry, these opportunities ("Business Opportunities") are the property of the brokerage firm.

48.     Defendants (or some of them) have engaged in a scheme to induce brokers working for Grubb & Ellis Affiliates not only to terminate their brokerage agreements, but also to conceal Business Opportunities and commissions from the firm when departing. Pursuant to the scheme, the brokers re-sign the Business Opportunities after commencing employment with Defendants, for which they may receive a higher commission from Avison Young or its U.S. affiliates when the Business Opportunity is consummated. This scheme is in violation of 18 U.S.C. 152(1), a felony under federal law.

- 13 -

49.     Defendants understood and intended (or recklessly disregarded) that the brokerage commission structure offered to brokers employed by Grubb & Ellis Affiliates induced them to conceal Business Opportunities from Grubb & Ellis Affiliates, thus concealing assets from the bankruptcy estate. As a result of these policies, at least 16 brokers have left Grubb & Ellis offices around the country—in New York, Chicago, Atlanta, and Pittsburgh—for Avison Young since the bankruptcy filing on February 20, 2012, and the commissions derived from the Business Opportunities and commissions associated with the departing brokers have fallen more precipitously than customary. Had Defendants not induced the brokers to conceal the Business Opportunities and commissions, instead of reporting them upon termination of their contracts, Grubb & Ellis would have continued to receive a normally declining rate of commissions from departing brokers.

50.     At least one broker in Grubb & Ellis' office in New York, New York, departed after the bankruptcy filing to join AY-New York. Based on past performance and other available information, the broker had significant pending Business Opportunities at the time of his departure which, under the terms of his contract with Grubb & Ellis, belonged to Grubb & Ellis and should have resulted in commission revenue to Grubb & Ellis following his departure. Instead, Grubb & Ellis has received no commission revenue from any Business Opportunities relating to work that the broker performed at Grubb & Ellis.

<u>Claims</u>

Count I
<u>Tortious Interference with Contractual Relationships</u>
(Inducing Breach of the Nevada and South Carolina Affiliate Agreements)

51.     Plaintiffs incorporate by reference each and every allegation above as if fully set forth.

- 14 -

52.     At all relevant times, Grubb & Ellis, through its subsidiary, Grubb & Ellis Affiliates, had valid contracts with its affiliates in Nevada and South Carolina. Those contracts were a valid part of the assets of Grubb & Ellis and its subsidiaries and were acquired by BGC Partners on April 5, 2012.

53.     Defendants had knowledge of Plaintiffs' contracts with its Nevada and South Carolina affiliates.

54.     Defendants induced the Nevada and South Carolina affiliates to breach their affiliate agreements, without justification, by terminating their affiliation agreements with Grubb & Ellis Affiliates in violation of the "automatic stay," without providing the requisite 150-day advance notice and in violation of the non-competition provisions of the agreements.

55.     Defendants induced these breaches of contract intentionally and without justification.

56.     Defendants' tortious interference with contract caused pecuniary loss to Plaintiffs.

57.     By reason of the foregoing, Defendants are liable for tortious interference with contract.

Count II
Tortious Interference with Contractual Relationships
(Inducing Breach of Individual Broker Agreements)

58.     Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

59.     At all relevant times, Grubb & Ellis had valid contracts with its individual real estate brokers.

- 15 -

60.     Defendants had knowledge of Plaintiffs' contracts with its individual real estate brokers.

61.     Defendants induced the individual Grubb & Ellis real estate brokers to breach their contractual agreements, without justification, by terminating their broker agreements and by concealing Business Opportunities from Plaintiffs upon their departure.

62.     Defendants induced these breaches of contract intentionally and without justification.

63.     Defendants' tortious interference with contract caused pecuniary loss to Plaintiffs.

64.     By reason of the foregoing, Defendants are liable for tortious interference with contract.

Count III
Tortious Interference with Prospective Business Relationships

65.     Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

66.     Plaintiffs had and continue to have ongoing business relations with third parties who are prospective participants in real estate transactions.

67.     Defendants interfered with these business relations by knowingly or recklessly inducing individual Grubb & Ellis real estate brokers to conceal Business Opportunities and commissions from Plaintiffs when they depart Grubb & Ellis to join Avison Young or its U.S. affiliates.

68.     In interfering with these business relations, Defendants used dishonest, unfair, and improper means, including (a) concealing assets from the bankruptcy estate in violation of the "automatic stay" established by Section 362(a)(3) of the Bankruptcy Code and the

- 16 -

prohibitions of 18 U.S.C. §152(5); (b) tortiously interfering with contracts, as alleged above; (c)

engaging in criminal conduct, as alleged above; and (d) aiding and abetting breaches of fiduciary

duty and duties of fidelity, as alleged below.

69.     As a direct and proximate result of Defendants' actions, Plaintiffs were

deprived of Business Opportunities to which they were entitled.

70.     As a result of Defendants' tortious interference, Plaintiffs' relationship with

these third parties has been injured.

Count IV<br>Unjust Enrichment

71.     Plaintiffs incorporate by reference each and every allegation set forth above as

if fully set forth.

72.     Defendants have received a benefit in the form of a substantial number of

Business Opportunities and commissions that rightly belonged to Plaintiffs and/or the

bankruptcy estate, of which Plaintiffs are beneficiaries.

73.     Defendants had knowledge of the benefit provided to them and have retained

it at expense of Plaintiffs and/or the bankruptcy estate.

74.     It would be unjust to allow Defendants to retain the benefit they received from

Plaintiffs and/or the bankruptcy estate.

75.     By reason of the foregoing, Defendants are liable for unjust enrichment.

Count V<br>Aiding and Abetting Breach of Fiduciary Duty

76.     Plaintiffs incorporate by reference each and every allegation set forth above as

if fully set forth.

- 17 -

77.     At every relevant time, certain senior-level real estate brokers, who were Plaintiffs' agents, owed Plaintiffs fiduciary duties based on, *inter alia*, the special trust and confidence that had been reposed in them by Plaintiffs, the control that Plaintiffs entrusted to them to protect and maintain custody of the Plaintiffs' assets in the form of Business Opportunities, and the reliance that Plaintiffs placed on the brokers' expertise and knowledge of Business Opportunities.  The fiduciary duties owed by individual real estate brokers to Plaintiffs included duties of loyalty, care, disclosure and fair dealing, and the duty not to deprive Plaintiff of opportunities and information belonging to Plaintiffs.

78.     Individual brokers breached their fiduciary duties by the acts and omissions alleged above.

79.     At all relevant times, Defendants had knowledge of the individual brokers' fiduciary duty to Plaintiffs.

80.     Defendants knowingly participated in the breach by tortiously conspiring with these brokers to induce them to terminate their contracts, withhold information about Business Opportunities and commissions that properly belonged to Plaintiffs, and thus conceal assets from the bankruptcy estate.

81.     As a direct and proximate result of these breaches of fiduciary duty, Plaintiffs have been damaged in an amount to be proven at trial.

Count VI
## Aiding and Abetting Breach of Duty of Fidelity

82.     Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

83.     At every relevant time, certain less senior real estate broker employees, who were Plaintiffs' agents, owed Plaintiffs a duty of fidelity based on, *inter alia*, the special trust and

- 18 -

confidence that had been reposed in them by Plaintiffs, the control that Plaintiffs entrusted to them to protect and maintain custody of the Plaintiffs' assets in the form of Business Opportunities, and the reliance that Plaintiffs placed on the brokers' expertise and knowledge of Business Opportunities. The duty of fidelity owed by individual real estate broker employees to Plaintiffs included duties of loyalty, care, disclosure and fair dealing, and the duty not to deprive Plaintiffs of opportunities and information belonging to Plaintiffs.

84.     Individual broker employees breached their duties of fidelity by the acts and omissions alleged above.

85.     At all relevant times, Defendants had knowledge of the individual broker employees' duty of fidelity to Plaintiffs.

86.     Defendants knowingly participated in the breach by tortiously conspiring with these broker employees to induce them to terminate their contracts, withhold information about Business Opportunities and commissions that properly belonged to Plaintiffs, and thus conceal assets from the bankruptcy estate.

87.     As a direct and proximate result of these breaches of the duty of fidelity, Plaintiffs has been damaged in an amount to be proven at trial.

Count VII
Injunctive Relief

88.     Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth herein.

89.     Defendants continue to engage in the tortious and criminal acts alleged above.

90.     Plaintiffs will suffer irreparable injury for which no legal remedy exists if Defendants continue to tortiously interfere with their contractual rights and prospective business

- 19 -

relations and continue to aid and abet breaches of fiduciary duty and duties of fidelity owed by individual real estate brokers to Plaintiffs.

91.     A balancing of the equities tips in favor of Plaintiffs because Defendants will not be harmed by the issuance of an injunction; instead, an injunction simply will prohibit Defendants from engaging in acts that alter the status quo and are wrongful as a matter of both tort and criminal law.

92.     Public policy favors this injunction because it discourages Defendants from wrongful and criminal behavior and protects the interests of the bankruptcy estate.

93.     Unless an injunction is issued, Defendants likely will continue to plunder the assets, property, personnel, commissions and opportunities of Plaintiffs, thus unjustly diminishing the value of Plaintiffs' investment in Grubb & Ellis and concealing assets from the bankruptcy estate.

94.     To prevent this inequitable result, an injunction should be issued, enjoining Defendants from continuing (i) to interfere with Plaintiffs' contractual rights; and (ii) to interfere with Plaintiffs' prospective business relationships.

<u>Prayer for Relief</u>

WHEREFORE Plaintiffs respectfully request that the Court enter judgment for Plaintiffs and against Defendants, awarding Plaintiffs the following:

1.      Actual, compensatory, and consequential damages in an amount to be proven at trial, in excess of $1 million;

2.      Exemplary damages;

3.      The amount corresponding to Defendant's unjust enrichment;

4.      Pre-judgment and post-judgment interest at the highest lawful rates;

5.      Injunctive relief prohibiting Defendants from continuing to (i) interfere with Plaintiffs' contractual rights; and (ii) interfere with Plaintiffs' prospective business relationships; and

6.      Such other and further relief as may be appropriate.

Dated: August 1, 2012

Respectfully submitted,

COVINGTON & BURLING LLP

By:_____
C. William Phillips

Alicia J. Surdyk
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000

Attorneys for Plaintiffs

- 21 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

BGC PARTNERS, INC.,
and G&E ACQUISITION COMPANY, LLC,

Plaintiffs,

-against-

AVISON YOUNG (CANADA), INC.,
AVISON YOUNG (USA) INC.,
AVISON YOUNG - NEW YORK, LLC,
AVISON YOUNG - NEVADA, LLC,
AVISON YOUNG - WASHINGTON, D.C., LLC,
AVISON YOUNG - CHICAGO, LLC,
AVISON YOUNG - NEW ENGLAND, LLC,
AVISON YOUNG - ATLANTA, LLC,
AVISON YOUNG - SOUTHERN CALIFORNIA,
LTD.,
and AVISON YOUNG - PITTSBURGH, LTD.,

Defendants.

Index No. 652669/2012

---

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

**PLEASE TAKE NOTICE** that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: August 1, 2012

_____ (Signature)          620 Eighth Avenue (Address)

C. William Phillips _____ (Name)             New York, New York 10018-1405

Covington & Burling LLP ___ (Firm Name)        (212) 841-1000 _____ (Phone)

                                               cphillips@cov.com ___ (E-Mail)


To:     AVISON YOUNG (CANADA), INC., 18 York Street, Suite 400, Toronto, Ontario,
        Canada, M5J 2T8.

        AVISON YOUNG (USA) INC., 9700 West Higgins Road, Suite 500, Rosemont,
        Illinois, 60018.

        AVISON YOUNG - NEW YORK, LLC, 245 Park Avenue, New York, New York,
        10167.

        AVISON YOUNG - NEVADA, LLC, 3753 Howard Hughes Parkway, Suite 200, Las
        Vegas, Nevada, 89169 or 985 Damonte Ranch Parkway, Reno, Nevada, 89521.

        AVISON YOUNG - WASHINGTON, D.C., LLC, 1999 K Street, N.W., Suite, 650,
        Washington, D.C, 20006.

        AVISON YOUNG - CHICAGO, LLC, 120 N. LaSalle Street, Suite 3300, Chicago,
        Illinois, 60602 or 9700 West Higgins Road, Suite 500, Rosemont, Illinois, 60018.

        AVISON YOUNG - NEW ENGLAND, LLC, 52-R Roland Street, Boston,
        Massachusetts, 02129.

        AVISON YOUNG - ATLANTA, LLC, 30 Ivan Allen Jr. Boulevard, NW, Suite 900,
        Atlanta, Georgia, 30308.

        AVISON YOUNG - SOUTHERN CALIFORNIA, LTD., 2029 Century Park E,   Suite
        90068.

AVISON YOUNG - PITTSBURGH, LTD, 625 Liberty Avenue, Suite 3150, EQT
Plaza, Pittsburgh, Pennsylvania, 15222.

3

# EXHIBIT B

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BGC PARTNERS, INC.,<br>and G&E ACQUISITION COMPANY, LLC,<br><br>                   Plaintiffs,<br><br>  - against -<br><br>AVISON YOUNG (CANADA), INC.,<br>AVISON YOUNG (USA) INC.,<br>AVISON YOUNG - NEW YORK, LLC,<br>AVISON YOUNG - NEVADA, LLC,<br>AVISON YOUNG - WASHINGTON, DC.,<br>LLC,<br>AVISON YOUNG - CHICAGO, LLC,<br>AVISON YOUNG - NEW ENGLAND, LLC,<br>AVISON YOUNG - ATLANTA, LLC,<br>AVISON YOUNG - SOUTHERN<br>CALIFORNIA, LTD.,<br>and AVISION YOUNG - PITTSBURGH,<br>LTD.,<br><br>                  Defendants. | Case No.:_____ |

## DEFENDANTS' CONSENT TO REMOVAL

Defendants Avison Young (Canada), Inc., Avison Young-USA Inc., Avison Young-New York, LLC, Avison Young-Washington D.C., LLC, Avison Young-Chicago, LLC, Avison Young-New England, LLC, Avison Young-Atlanta, LLC, Avison Young-Southern California, Ltd., and Avison Young-Pittsburgh, LLC, hereby consent to the removal of this case by Defendant Avison Young-Nevada, LLC from the Supreme Court of the State of New York in the

County of New York, Index No. 652669/2012, to this Honorable Court, in the United States District Court for the Southern District of New York.

Respectfully submitted on this 31st day of August, 2012,

Beth A. Williams

Andrew B. Clubok
Beth A. Williams
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone:     (202) 879-5000
Facsimile:     (202) 879-5200
Andrew.Clubok@kirkland.com
Beth.Williams@kirkland.com

*Attorneys for Defendants Avison Young
(Canada), Inc., Avison Young-USA Inc.,
Avison Young-New York, LLC, Avison
Young-Nevada, LLC, Avison Young-
Washington D.C., LLC, Avison Young-
Chicago, LLC, Avison Young-New England,
LLC, Avison Young-Atlanta, LLC, Avison
Young-Southern California, Ltd., and Avison
Young-Pittsburgh, LLC*

2