UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

BGC PARTNERS, INC., and G&E
ACQUISITION COMPANY, LLC,

Plaintiffs,

- against -

AVISON YOUNG (CANADA), INC.,
AVISON YOUNG (USA), INC., AVISON
YOUNG - NEW YORK, LLC, AVISON
YOUNG - NEVADA, LLC, AVISON
YOUNG - WASHINGTON, D.C., LLC,
AVISON YOUNG - CHICAGO, LLC,
AVISON YOUNG - NEW ENGLAND, LLC,
AVISON YOUNG ATLANTA, LLC,
AVISON YOUNG - SOUTHERN
CALIFORNIA, LTD., and AVISON YOUNG
- PITTSBURGH, LTD.,

Defendants.

-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/18/13

**OPINION AND ORDER**

**12 Civ. 6680 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Plaintiffs BGC Partners, Inc. and G&E Acquisition Company, LLC (together "BGC") have moved to remand this case to state court or, alternatively, for this Court to abstain. They argue that the Court lacks subject matter jurisdiction because the parties are not diverse and all the claims arise under state

1

law.[1]  Moreover, plaintiffs argue, even if federal jurisdiction exists, the Court

should abstain under either 28 U.S.C. § 1334(c)(2) (mandatory abstention) or 28

U.S.C. § 1334(c)(1) (equitable absention).[2]  Defendants oppose both arguments.

## II.    BACKGROUND[3]

          Defendant Avison Young is one of Canada's largest real estate

brokerages.  Until 2008, Avison Young's current Chairman and Chief Executive

Officer, Mark Rose, was the president of Grubb & Ellis ("G&E"), which was one

of the largest brokerages in the United States before it declared bankruptcy in

February, 2012.[4]  On March 27, 2012, BGC purchased, "free and clear of any liens

or interest," all of G&E's rights, properties and assets including "Business

Opportunities."[5]  Plaintiffs allege that after Rose left G&E in 2008, Avison Young

---

[1]       Memorandum of Law in Support of Plaintiffs' Motion to Remand or
Abstain ("Pl. Mem.") at 1-2.

[2]       *Id.* at 2.

[3]       On a motion to remand for lack of subject matter jurisdiction, courts
assume the truth of non-jurisdictional facts raised in the Complaint, but may
consider material outside of the Complaint including "documents appended to a
notice of removal or a motion to remand that convey information essential to the
court's jurisdictional analysis" where jurisdictional facts are contested.  *Romano v.
Kazacos*, 609 F.3d 512, 520, 520 n.4.

[4]       *See* Complaint ("Compl.") ¶¶ 1, 24.

[5]       Pl. Mem. at 3 (citing Order of the Bankruptcy Court, *In re Grubb &
Ellis Co. et. al.*, No. 12 Civ. 10685 (Bankr. S.D.N.Y. Mar. 27, 2012), Ex. B to
Declaration of C. William Phillips in Support of Plaintiffs' Motion to Remand)

began targeting G&E personnel and stealing commissions, business and business opportunities from the company, and continued to do so after BGC purchased G&E.[6]  Specifically, they allege that defendants "continued their enterprise even after G&E filed for bankruptcy by repeatedly committing criminal theft from a bankruptcy estate in violation of 18 U.S.C. § 152."[7]  Plaintiffs allege that defendants have carried out this scheme by: (i) inducing G&E brokers to break their employment or independent contractor agreements; (ii) assisting larceny by these brokers and rewarding them for stealing business opportunities from G&E; (iii) inducing affiliates of G&E to breach their affiliation agreements; and (iv) inducing affiliate offices of G&E to breach their affiliation agreements and become

―――――――――――――――

("Sale Order")).

[6]      *See* Compl. ¶¶ 27-30.

[7]      *Id.* ¶ 4. Plaintiffs also allege that "Avison Young did not even attempt to bid for the assets of G&E in the bankruptcy sale" but instead "determined to subvert the bankruptcy process and steal as many of those assets . . . as possible." *Id.* ¶ 30.  Plaintiffs allege that defendants "tortiously conspired with at least two [] affiliates . . . during the period when the 'automatic stay' in bankruptcy was in effect and, as such, were illegal under the Bankruptcy Code [and] resulted in Defendants' knowing and fraudulent receipt of property of the bankruptcy estate" in violation of 18 U.S.C. § 152(5).  *Id.* ¶ 31. Finally, plaintiffs argue that an injunction in this case would "protect[] the interests of the bankruptcy estate."  *Id.* ¶ 92.

affiliates of Avison Young.[8]

On August 2, 2012, BGC filed suit in the Supreme Court of the State of New York, New York County ("NY Supreme Court") against all of the Avison Young entities believed to have participated in the alleged scheme to steal assets and offices, including Avison Young - New York ("AY - New York"), a New York company headquartered in New York.[9]  The Complaint states seven state-law claims: two for tortious interference with contractual relationships, one for tortious interference with prospective business relationships, one for unjust enrichment, two for aiding and abetting breach of fiduciary duty and the duty of fidelity, and one for injunctive relief.[10]  On August 31, 2012, defendant Avison Young - Nevada filed a Notice of Removal pursuant to 28 U.S.C. § 1446 alleging two grounds for removal: (1) that complete diversity exists and the case is removable pursuant to 28 U.S.C. §§ 1332 and 1441; and (2) that the case is "related to" a pending bankruptcy

---

[8]     *See id.* ¶¶ 30, 31.  Defendants allege that the brokers were at will employees and when BGC purchased the assets of G&E they attempted to force new, more restrictive contracts on the brokers.  *See* Memorandum of Law in Opposition to Plaintiffs' Motion to Remand or Abstain ("Def. Mem.") at 4.  As a result, defendants claim, many brokers rejected these contracts, and affiliates suspended their at-will relationships.  *See id.*

[9]     Plaintiffs allege that AY - New York stole one broker and his business opportunities from Grubb & Ellis's New York office.  *See* Compl. ¶¶ 49-50.

[10]     *See id.* ¶¶ 51-94.

proceeding and removable pursuant to 28 U.S.C. §§ 1334(b) and 1452(a).[11]

## III.   LEGAL STANDARD FOR REMOVAL

Removal jurisdiction is strictly construed in view of the significant federalism concerns it raises,[12] and any doubts are resolved against removability.[13] Defendants, as the parties seeking removal, bear the burden of establishing subject matter jurisdiction.[14]

## IV.   APPLICABLE LAW

### A.   Diversity Jurisdiction

A district court has original jurisdiction of a civil action "where the matter in controversy exceeds the sum or value of $75,000" and the action is between "citizens of different States."[15]   "[I]dentity of citizenship between a

---

[11]      *See* Notice of Removal [Dkt. No. 1] ¶ 9.

[12]      *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability.") (internal quotation marks omitted).

[13]      *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).

[14]      *Andrews v. Modell*, 636 F. Supp. 2d 213, 219 (S.D.N.Y. 2008) (citing *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994)).

[15]      28 U.S.C. § 1332(a).

plaintiff and a defendant is sufficient to defeat federal diversity jurisdiction."[16]  A

plaintiff "may not defeat a federal court's diversity jurisdiction and a defendant's

right of removal by merely joining as defendants parties with no real connection

with the controversy."[17]  However, the standard for establishing "fraudulent

joinder" is high – the defendant "must demonstrate, by clear and convincing

evidence, either that there has been outright fraud committed in the plaintiff's

pleadings or that there is *no possibility*, based on the pleadings, that a plaintiff can

state a cause of action against the nondiverse defendant in state court."[18]

### B.   Bankruptcy Proceedings

#### 1.   "Related to" Federal Jurisdiction

Title 28 of the United States Code § 1334(b) provides that "the district

courts shall have original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11."  Cases

"arising under" title 11 or "arising in" a title 11 case are "core" proceedings that

---

[16]    *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001).

[17]    *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998).

[18]    *Whitaker*, 261 F.3d at 207 (emphasis added).  *Accord Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) (question of fraudulent joinder "turns on whether recovery is per se precluded" against nondiverse defendant).

may be heard and determined by bankruptcy courts, subject to appellate review by the district courts.[19]   A "non-core" civil proceeding is "related to" a bankruptcy proceeding, and federal jurisdiction exists, if the outcome of the litigation "might have any conceivable effect on the bankruptcy estate."[20]   The Supreme Court has explained that

> [a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.[21]

"Related to" jurisdiction, while broad, "cannot be limitless" and "may extend more broadly in [the case of reorganizations] than in the [case of liquidations]," such as the proceeding implicated here.[22]   The potential effect of the state action on the efficient administration of the bankruptcy estate is a central factor in the inquiry.[23]

---

[19]      *Id.* § 157(b)(1).

[20]      *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) ("*Parmalat I*").   I do not find (and defendants do not contend) that the claims fall within section 157(b)(2)'s non-exclusive list of "core proceedings" that are "directly related to a bankruptcy court's central functions."  *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005).  *See* Notice of Removal ¶ 6.

[21]      *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995).

[22]      *Id.* at 308, 310.  *Accord In re WorldCom Secs. Litig.*, 293 B.R. 308, 317 (S.D.N.Y. 2003).

[23]      *See Celotex Corp.*, 514 U.S. at 308 ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal

Most recently, the Second Circuit found that a case was "related to" a bankruptcy liquidation proceeding where "if [plaintiffs are] successful in their claims against [defendant], the funds they recover will benefit the [] bankruptcy estates."[24]

## 2. Abstention

The expansive interpretation of "related to" jurisdiction as including anything that could "conceivably affect" the bankruptcy estate is tempered by section 1334(c) of the Bankruptcy Code, which specifies circumstances in which courts *must* abstain from hearing state law claims even if they are "related to" a bankruptcy proceeding,[25] as well as circumstances in which a court *may*, in its discretion, abstain.[26] Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced

---

efficiently and expeditiously with all matters connected with the bankruptcy estate.").

[24]    *Parmalat I*, 639 F.3d at 579 (citing *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005) (finding related to jurisdiction where "[the liquidating entity's] success or lack of success in securing a share of the trust corpus will directly impact the amount of the liquidating dividend eventually paid to [the debtor's] creditors.")).

[25]    *See* 28 U.S.C. § 1334(c)(2).

[26]    *See id.* § 1334(c)(1).  Because I find it unnecessary to reach equitable abstention I do not discuss it here.

in a court of the United States absent jurisdiction under this section, the district court *shall* abstain from hearing such proceeding *if* an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[27]

## V.   DISCUSSION

### A.   Diversity Jurisdiction

In order to establish that diversity jurisdiction exists despite the presence of non-diverse defendant AY - New York,[28] defendants must prove that "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against AY - New York."[29]  Defendants allege that the three references to AY - New York in the Complaint are insufficient to state a cause of action against it.[30]  The first reference names AY - New York as a defendant and notes its principal place of business in New York.[31]  The second reference states that "the Court has jurisdiction over AY - New York because it is a domestic corporation with its principal place of business in New York," and that personal jurisdiction is proper as to all defendants "because New York was the location for many of the

---

[27]    *Id.* § 1334(c)(2) (emphasis added).

[28]    Defendants do not dispute that AY- New York is not diverse.  *See* Notice of Removal ¶ 19.

[29]    *Pampillonia*, 138 F.3d at 461.

[30]    *See* Def. Mem. at 10.

[31]    Compl. ¶ 11.

tortious actions from which th[e] action arises" and as to the foreign defendants because they were "co-conspirators and beneficiaries of the illegal activities . . . carried out, in part, by AY - New York within the state of New York."[32]  The third reference states that "[a]t least one broker in [G&E's] office in New York, New York, departed after the bankruptcy filing to join AY - New York."[33]

Plaintiffs make detailed allegations as to AY- Nevada and AY- South Carolina.[34]  In addition, they allege that defendants "have engaged in a scheme to induce brokers working for [G&E] Affiliates not only to terminate their brokerage agreements, but also to conceal Business Opportunities and commissions from the firm when departing."[35]  "As a result of these policies," plaintiffs allege, "at least 16 brokers have left [G&E] offices around the country – in New York, Chicago, Atlanta, and Pittsburgh – for Avison Young since the bankruptcy filing on February 20, 2012," and specifically "at least one broker in [G&E's] office in New York . . . departed after the bankruptcy filing to join AY- New York" taking with him "significant pending Business Opportunities . . which, under the terms of his

---

[32]     *Id.* at ¶ 20.

[33]     *Id.* at ¶ 50.

[34]     *See id.* ¶¶ 32-38 (discussing the "Nevada Agreement") and ¶¶ 39- 45 (discussing the "South Carolina Agreement").

[35]     *Id.* ¶ 48.

contract with [G&E], belonged to [G&E]."[36]  These allegations relate to plaintiffs'

claims for tortious interference with contractual relationships, tortious interference

with prospective business relationships, unjust enrichment, and aiding and abetting

breach of fiduciary duties and the duty of fidelity.[37]

Based on the allegations in the Complaint, defendants cannot

demonstrate, at least not with the requisite "clear and convincing evidence," that

recovery against AY- New York is per se foreclosed.  This is not a situation in

which plaintiffs have made allegations only against defendants generally with

nothing specific as to the non-diverse defendant.[38]  The Complaint alleges that a

broker from G&E left to join AY- New York, which defendants do not contest, and

states further that "[b]ased on past performance and other available information,

the broker had significant pending Business Opportunities at the time of his

departure" belonging to G&E.[39]   Particularly in the context of the broader

---

[36]     *Id.* ¶¶ 49-50.

[37]     *See id.* ¶¶ 51, 52.

[38]     *Cf. In re Rezulin Prods. Liability Litig.*, 168 F. Supp. 2d 136, 140
(S.D.N.Y. 2001) (finding fraudulent joinder where "plaintiffs make no specific
allegations against [the non-diverse defendant]" and "attribut[e] all wrogndoing to
the collective defendants"); *In re Rezulin Prods. Liability Litig.*, 133 F. Supp. 2d
272, 291 (S.D.N.Y. 2001) (finding fraudulent joinder where plaintiffs "lumped
non-diverse defendants with defendants generally").

[39]     Compl. ¶ 50.

allegations that Avison Young carried out a widespread scheme to "expand

aggressively in the U.S. by stealing the operations and offices [of G&E],"[40] this is

sufficient to "give the court and parties notice of the transactions . . . intended to be

proved and the material elements of each cause of action"[41] and to "draw a

reasonable inference that the defendant is liable for the misconduct alleged."[42]

   Although defendants raise numerous potentially meritorious

arguments as to why the claims against AY - New York are deficient,[43] the

question of whether these claims must ultimately be dismissed is not coterminous

with whether AY - New York was fraudulently joined, and is reserved for

whichever court is ultimately determined to have jurisdiction, be it state or

federal.[44]  Furthermore, for each attempt to eliminate a claim against AY - New

York, plaintiffs provide some potentially relevant exception, undermining

---

[40] *Id.* ¶ 29.

[41] N.Y. C.P.L.R. § 3013.  *See also DNJ Logistic Grp., Inc. v. DHL Express (USA) Inc.*, 727 F. Supp. 2d 160, 165 (E.D.N.Y. 2010) (in fraudulent joinder context, state pleading standards should be applied because the purpose of the analysis is to "determine whether a *state* court might permit a plaintiff to proceed with his claims") (emphasis in original).

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[43] *See* Def. Mem. at 12-15.

[44] *See DNJ Logistic*, 727 F. Supp. 2d at 165 ("[E]ven if there is doubt as to whether a complaint would survive a motion to dismiss in state court, this doubt does not preclude remand.").

defendants' claim that recovery against AY - New York is per se precluded.  For example, in response to defendants' claim that New York law does not recognize claims for tortious interference with "at will" service contracts, plaintiffs argue that such claims are permitted where "'the third party used wrongful means . . . that the means used violated a duty owed by the defendant to the plaintiff, or that the defendant acted with malice.'"[45]  With respect to the tortious interference with business relations claim, plaintiffs argue that they have adequately alleged use of "improper means by showing that the means used were dishonest, unfair, or improper."[46]  With respect to the breach of duties of fidelity, plaintiffs state that "when an at-will employee 'diverts business opportunities to himself or others to the financial detriment of the employer,' this conduct is actionable" and that that is precisely the conduct that plaintiffs allege AY - New York aided and abetted.[47]  Defendants have failed to meet the high burden of showing that recovery against

---

[45]    Reply Memorandum of Law in Support of Plaintiffs' Motion to Remand or Abstain ("Pl. Rep.") at 4 (quoting *Cohen v. Davis*, 926 F. Supp. 299, 403 (S.D.N.Y. 1996) (collecting New York cases)).  Plaintiffs allege that the "wrongful means" were a "scheme by which Defendants offered departing brokers an incentive to conceal Business Opportunities and bring those Opportunities to Avison Young."  *Id.*

[46]    *Id.* (quoting *D'Andrea v. Rafla-Demetrious*, 3 F. Supp. 2d 239, 249-50 (E.D.N.Y. 1996)).

[47]    *Id.* (quoting *Sullivan & Cromwell LLP v. Charney*, 841 N.Y.S.2d 222 (N.Y. Sup. Ct., N.Y. Co. 2007)).

AY - New York is per se precluded.  As a result, this Court lacks diversity jurisdiction.

### B.    Bankruptcy Jurisdiction

Defendants make several arguments as to why the allegations in this case are "related to" the bankruptcy proceedings.  *First,* they argue that "the Asset Purchase Agreement ('APA'), by which BGC bought the assets of G&E, provides that if Plaintiffs commence lawsuits contemplated by the purchase agreement and recover assets in excess of $20 million, *the estate will recover.*"[48]  Defendants argue that plaintiffs' request for damages of one million dollars plus exemplary damages, an amount equivalent to defendants' unjust enrichment, and pre-and-post-judgment interest, render it "quite conceivable that the threshold could be reached and the estate would have the potential to recover."[49]  *Second*, defendants argue that plaintiffs' claims are "based on contracts that *remain the property of the estate*."[50]  In sum, the executory contracts which are the subject of the contract claims remain with G&E, and therefore are the property of the bankruptcy estate and subject to the protections of the automatic bankruptcy stay until transferred to

---

[48]    Def. Mem. at 6 (emphasis in original).

[49]    *Id.*

[50]    *Id.* (emphasis in original).

BGC.[51]  In fact, plaintiffs request an injunction to "protect[] the interests of the

bankruptcy estate"[52] and argue that defendants "criminally violated the bankruptcy

estate's automatic stay."[53]  *Third*, and relatedly, defendants argue that "to the extent

that plaintiffs' claims are premised on a violation of the automatic stay, they may

not be adjudicated in state court and remand is improper."[54]

        Defendants' third argument is essentially a preemption argument

based on the Second Circuit's holding in *Eastern Equipment and Services Corp. v.*

*Factory Point National Bank, Bennington*, that the "federal Bankruptcy Code

preempts any state law claims for a violation of the automatic stay, and precludes

---

[51]     *See id.* at 8 (citing Compl. ¶¶ 24, 26).

[52]     Compl. ¶ 92.

[53]     *Id.* ¶ 68.  *See also id.* ¶¶ 31, 45.  This argument fails to establish
"related to" jurisdiction.  Although certain of the executory contracts at issue have
not yet been *formally* assigned to BGC pending BGC's obtaining the necessary
permits and licenses, all of the "commissions, Business Opportunities, and
agreements at issue were . . . sold to Plaintiffs and [those sales were] approved by
the bankruptcy court on March 27, 2012."   Pl. Mem. at 11 (citing Sale Order ¶ 15
("At the closing, all of the Debtor's right, title and interest in and to, and
possession of, the Acquired Assets shall be *immediately* vested in Buyer . . . free
and clear of any and all Claims")).   Courts have declined to find "related to"
jurisdiction where "the asset [in question] had been sold, the bankruptcy estate was
not a party to the action, and the defendants were not debtors or creditors."  *In re*
*DVI, Inc.*, 305 B.R. at 417 (discussing *New Horizon of N.Y. LLC v. Jacobs*, 231
F.3d 143 (4th Cir. 2000).

[54]     Def. Mem. at 9.

jurisdiction in the district courts."[55]  The Second Circuit relied in large part on the

Ninth Circuit's decision in *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, which held

that a debtor's state law malicious prosecution action based on "events taking place

within the bankruptcy proceedings" was completely preempted by federal

bankruptcy law and, further, that the *complete* preemption of the claim gave rise to

federal question jurisdiction.[56]

    Neither *Eastern Equipment* nor *MSR* suggest that this case belongs in

federal court either under a preemption theory *or* the distinct theory of "related to"

jurisdiction.  The actions that form the basis for plaintiffs' Complaint were not

events taking place within the bankruptcy proceedings.  Although plaintiffs allege

violations of the bankruptcy stay numerous times in their Complaint, at bottom

their claims are for interference with contracts and certain duties of loyalty – that

they may or may not have violated the bankruptcy stay is incidental.[57]  Courts have

---

[55]  236 F.3d 117, 120-21 (2d Cir. 2001).

[56]  74 F.3d 910, 913–16 (9th Cir. 1996).  The court "recognize[d] that preemption assertions are normally matters of defense and will not suffice to establish federal jurisdiction" but noted that the "complete preemption doctrine is often an exception to that rule."  *Id.* at 912 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)

[57]  BGC acknowledges that "concealing assets and stealing from the bankruptcy estate (as well as from BGC, which is not in bankruptcy) are among several 'improper means' that defendants used to interfere" but states that "[t]hese means would be improper whether or not they arose in the context of an automatic

recognized in this very context that "[a] plaintiff remains master of his pleading and may pitch his complaint on entirely separate grounds, even though he could have spelled out what would have been a preempted [bankruptcy] claim.  When that occurs, a preemption assertion remains a matter of defense and will not establish jurisdiction."[58]

Nor does the possibility that certain grounds for plaintiffs' state law claims may be preempted establish "related to" jurisdiction.  To the extent that the state court determines that the state law claims are premised on violations of the automatic stay, it is free, and indeed obligated, to dismiss them on preemption grounds.[59]  That is a risk that plaintiffs take by bringing their claims in state court.[60]

_____

stay" – in other words, the claims are not premised on that violation.  Pl. Rep. at 7.

[58]      *MSR Exploration, Ltd.*, 74 F.3d at 913 (citing *Caterpillar*, 482 U.S. at 398-99).  *Accord*, *In re Extended Stay*, 435 B.R. 139, 149 (S.D.N.Y. 2010) ("Unlike the plaintiff in [*MSR*], which 'self-consciously and entirely ... [sought] damages for a claim filed and pursued in bankruptcy court,' [plaintiff here] seeks the enforcement of contractual obligations.").

[59]      Indeed, according to the Second Circuit, this Court would be obligated to do the same.  *See Eastern Equipment*, 236 F.3d at 121 (holding that the *district court* lacked jurisdiction to entertain the purported state law claim for violation of the automatic stay, and that any such claim could be brought only in bankruptcy court only).

[60]      *Cf. Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 470 (1998) (holding that removal was improper where a plaintiff's state cause of action was precluded by a prior federal judgment on a federal question because that is a defensive plea properly made in state court).

Although defendants' other arguments fail, I cannot say with any certainty that the potential for recovery by the bankruptcy estate if damages exceed twenty million dollars falls outside the "conceivable effect" test adopted by the Second Circuit.[61] In *Parmalat I* there was apparently no question that "if [plaintiffs were] successful in their claims . . . the funds they recover [would] benefit the respective bankruptcy estates," whereas here it is far from certain that any recovery would go to the estate.  However, in the absence of limiting guidance on the meaning of "conceivable effect," courts have found that even an "unlikely" possibility that the bankruptcy estate's rights might be altered satisfies the "conceivable effect" test.[62]  Regardless, it is unnecessary to probe the limits of the "conceivable effect" test because, even assuming that plaintiffs' claims are "related to" the bankruptcy proceeding, as discussed in the following section they fall within the category of  "non-core, state law claims that can be timely adjudicated []

_____

[61]     *Parmalat I*, 639 F.3d at 579.

[62]     *See, e.g.*, *In re Extended Stay Inc.*, 435 B.R. at 150 ("However unlikely it might be that there will be sufficient value in the estate to provide for actual distributions that could be affected by such adjustments, the prospect of an effect on distributions is conceivable . . . ."); *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07 Civ. 4634, 2007 WL 4323003, at *1, n.1 (S.D.N.Y. Dec. 10, 2007) ("Certainty, or even likelihood, is not required" and jurisdiction exists as long as "it is possible that the proceeding may affect the debtor's rights or the administration of the estate.").

in a State forum,"[63] and this Court's abstention is therefore mandatory.

### C.   Abstention

> Section 1334(c)(2) mandates abstention if six factors are met:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case . . .(4) Section 1334 provides the sole basis for federal jurisdiction; (5) [the] action is commenced in state court; and (6) th[e] action can be timely adjudicated in state court.[64]

It is undisputed that the motion to abstain was timely and that the instant action was commenced in state court.  In light of my previous conclusions that the action is based on state law claims with preemption arising only as a defense, that plaintiffs' claims are at most "related to" a bankruptcy case, and that section 1334 provides the sole basis for federal jurisdiction, the only factor at issue is whether the action can be timely adjudicated in state court.[65]

> The Second Circuit has identified four factors that a court should consider in evaluating section 1334(c)(2) timeliness:

> (1) the backlog of the state court's calendar relative to the federal

---

[63]   *Stern v. Marshall*, – U.S. –, 131 S. Ct. 2594, 2620 (2011) (quoting 28 U.S.C. § 1334(c)(2)) (alterations in original).

[64]   *In re WorldCom*, 293 B.R. at 331.

[65]   Defendants do not contest that the motion was timely, that the claims were brought in state court or that the action is "related to" rather than arising out of bankruptcy proceedings.  *See* Def. Mem. at 18.

> court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.[66]

As to the first factor, there is "no foreseeable significant difference in the comparative speed of adjudication of [the Southern District] and the Commercial Division."[67]

As to the second factor, plaintiffs allege only state law claims and there is no question that state courts are best positioned to interpret and apply state law.[68]  Neither the district court nor the state court has any *current* familiarity with

---

[66]    *Parmalat I*, 639 F.3d at 580.  The Second Circuit left open the issue of who bears the burden on the question of whether a case may be timely adjudicated in state court.  *See id.* at 582.  It noted that "[p]lacing the burden on the party seeking remand may nevertheless be inconsistent with the mandatory nature of abstention under § 1334(c)(2) as well as the principles of comity, which presume that a state court will operate efficiently and effectively."  *Id.*  Thus, I conclude that, particularly in the context of removal, where any doubts are to be resolved against removability, the burden should be on defendants to prove that the state court *cannot* adjudicate the claims in a timely manner.

[67]    *Allstate Ins. Co. v. Credit Suisse Secs. (USA) LLC*, No. 11 Civ. 2232, 2011 WL 4965150, at *8 (S.D.N.Y. Oct. 19, 2011).  *Accord Parmalat Capital Fin. Ltd. v. Bank of America Corp.*, 671 F.3d 261, 267 (2d Cir. 2012) (*Parmalat II*) (agreeing that while remand might slightly prolong adjudication, the factor was not dispositive where "that difference in timing appears to be a matter of months, rather than years").

[68]    *See Parmalat II*, 671 F.3d at 268 ("Remand will allow the state courts . . . to speak directly on these issues of state law.") Although the legal issues in this case may not be complex, in the absence of any factor weighing in favor of the

the underlying bankruptcy proceedings, which are being adjudicated in bankruptcy court, nor is either court familiar with the facts of the case.[69]

The third factor considers "whether the litigants in a state proceeding need the state law claims to be quickly resolved as a result of the status of the ongoing title 11 bankruptcy proceeding."[70]  Defendants argue simply that "creditors are concerned about the time it will take to recover the money that is owed to them."[71]  As already discussed, the possibility of anyone other than plaintiffs recovering is highly speculative; moreover, it is not clear that a mere delay in the ultimate recovery of money, as opposed to a delay in the allocation of the estate, counsels against mandatory abstention.

Finally, as to the fourth factor, in determining whether a state proceeding would prolong liquidation of an estate, the Second Circuit has considered: (i) whether the district court is concurrently charged with administration of the bankruptcy estate; (ii) close connections between the

---

district court as better-equipped to adjudicate the case, the balance favors abstention.

[69]     *Cf. id.* (noting that the district court's familiarity with the facts did not outweigh the superiority of state court as the forum to adjudicate complex questions of state law).

[70]     *Parmalat*, 639 F.3d at 581.

[71]     Def. Mem. at 21.

defendants in the action and the debtor; and (iii) the complexity of the litigation.[72] This litigation is not particularly complex and, to the extent that it is, the state court may be better equipped to resolve the issues. Where "the district court here is not charged with administration of a bankruptcy estate . . . the possibility that remand of the state court claims will slow down the [bankruptcy] proceeding is insufficient to show that state court adjudication would be untimely."[73]   Therefore, because all the factors of 28 U.S.C. § 1334(c)(2) are satisfied, abstention is mandatory.

## VI.   CONCLUSION

In light of the foregoing, plaintiffs' motion to remand is granted. The Clerk of the Court is directed to furnish the Clerk of the appropriate state court with a certified copy of this Order and close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      January 18, 2013
            New York, New York

---

[72]      *See Parmalat*, 639 F.3d at 581.

[73]      *Id.* at 581-82.

22

**- Appearances -**

**For Plaintiffs:**

C. William Phillips, Esq.
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
(212) 841-1000

**For Defendants:**

Andrew Brian Clubok, Esq.
Beth Ann Williams, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4836